# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

JERRY GORALSKI LAMB,

    *Plaintiff,*

v.

MILLENNIUM CHALLENGE
CORPORATION, *et al.*,

    *Defendants.*

Civil Action No. 19-589 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Jerry Goralski Lamb, appearing *pro se*, brings this suit against the Millennium

Challenge Corporation (the "MCC") and James Blades, an MCC official.  In 2016, Plaintiff

worked for about two months as a personal services contractor assigned to the MCC, until he

was terminated after allegedly failing a background check.  Since then, Plaintiff has taken a

variety of steps seeking to understand and to challenge that background check and his

termination.  He first filed requests for records related to his termination pursuant to the Freedom

of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act, 5 U.S.C. § 552a.  After the

MCC failed to timely respond, Plaintiff brought suit in this Court, and the MCC (and the

Department of State) eventually released the disputed records.  *See Lamb v. Millennium

Challenge Corp.*, 334 F. Supp. 3d 204 (D.D.C. 2018) (*Lamb I*); *Lamb v. Millennium Challenge

Corp.*, No. 16-cv-765, 2019 WL 4141868 (D.D.C. Aug. 30, 2019) (*Lamb II*); Minute Order,

*Lamb v. Millennium Challenge Corp.*, No. 16-cv-765 (D.D.C. Jan. 23, 2020).  Then, based on

records he obtained in that litigation, Plaintiff brought this suit in March 2019, asserting four due

process claims, two Privacy Act claims, and other ill-defined claims against the MCC and

Blades. *See Lamb v. Millennium Challenge Corp.*, 498 F. Supp. 3d 104, 108 (D.D.C. 2020) (*Lamb III*).   In response, Defendants moved to dismiss.   Dkt. 29 at 1.   The Court denied that motion with respect to Plaintiff's due process claims and one of his two Privacy Act claims, but otherwise granted the motion without prejudice.   *Lamb III*, 498 F. Supp. 3d at 120–21.

That leads to where Plaintiff's efforts now stand.   With leave of Court, Plaintiff filed an amended complaint that (1) retains the claims that the Court declined to dismiss, (2) attempts to cure the defects in the Privacy Act claim that the Court dismissed, and (3) seeks to add a claim under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.   See* Dkt. 29 (1st Am. Compl.).   Defendants, for their part, move to dismiss the amended Privacy Act claim and the FTCA claim.   Dkt. 32.   Leaving no stone unturned, Plaintiff seeks leave to amend his complaint, yet again, to "clarif[y]" his Privacy Act claim and the "common law claims that underlie his FTCA claim."   Dkt. 37 at 1–2.

For the reasons explained below, the Court will **GRANT** Defendants' partial motion to dismiss, Dkt. 32, and will also **DENY** Plaintiff's motion for leave to amend the complaint, Dkt. 37.

## I. BACKGROUND

Given the long history of Plaintiff's litigation against the MCC and Blades, and the Court's numerous opinions leading up to the present motion, the Court will only briefly recount the relevant background.   The Court assumes the truth of the allegations in Plaintiff's first amended complaint for purposes of resolving Defendants' motion to dismiss for failure to state a claim, but will consider facts outside the pleadings for purposes of resolving Defendants' motion to dismiss for lack of jurisdiction.   *See Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015).

On February 22, 2016, Plaintiff began working for Sawdey Solutions Services, Inc.,
which served as a contractor for the MCC.  Dkt. 29 at 3 (1st Am. Compl. ¶ 7); *see also Lamb III*,
498 F. Supp. 3d at 106.  The job required a favorable background check, but it did not require a
security clearance or handling any classified information.  Dkt. 29 at 3 (1st Am. Compl. ¶ 7).
Although Plaintiff believed that he had already been "cleared" by the time he started the job, the
MCC informed him two weeks after he started work that he would need to interview with
someone from the State Department "as part of his background investigation." *Id.* (1st Am.
Compl. ¶ 8).  The State Department assisted in conducting Plaintiff's background investigation.
*Id.* (1st Am. Compl. ¶¶ 8–9).

On April 18, 2016, MCC officials "terminated [Plaintiff's] employment," "confiscated"
his "government identification," and "removed him from the premises." *Id.* (1st Am. Compl.
¶ 9).  Plaintiff later learned from Sawdey that he was terminated because his "security check
came back unfavorable." *Id.*  As a result, Plaintiff was "not permitted to continue to work on the
MCC contract," and he was "debarred for 36 months by the MCC." *Id.*  Plaintiff alleges that he
was "stigmatized as a result" of the MCC's actions; that he "lost his job;" and that, despite his
"best efforts," he has been unable to secure "alternative employment" as a government
contractor. *Id.*  To this day, Plaintiff "is still seeking employment." *Id.*

According to Plaintiff, "no one from the MCC has ever explained to him what issues or
charges arose" that resulted in his unfavorable background check, and the MCC never provided
"him the opportunity to respond to the agency's concerns or charges." *Id.* (1st Am. Compl.
¶ 10).  Determined to learn what happened, Plaintiff requested "copies of all information
maintained about himself" from the MCC. *Id.* at 4 (1st Am. Compl. ¶ 11).  When the agency
failed to timely respond, Plaintiff sued the MCC under FOIA and the Privacy Act. *See Lamb II*,

3

2019 WL 4141868, at *1.  After three years of litigation and three opinions from this Court, the MCC (and the State Department) finally provided the requested documents to Plaintiff, and the Court closed the case in January 2020.  Minute Order, *Lamb v. Millennium Challenge Corp.*, No. 16-cv-765 (Jan. 23, 2020).

The records Plaintiff obtained shed light on the reasons for his termination.  According to Plaintiff, as part of his background investigation, the State Department provided the MCC with a "robust and detailed" Report of Investigation ("ROI"), which Plaintiff alleges "ended under favorable conditions."  Dkt. 29 at 5 (1st Am. Compl. ¶ 19).  The MCC then created an "Adjudication Worksheet" that listed four "issues" relating to Plaintiff's background.  *Id.* (1st Am. Compl. ¶¶ 16–17); Dkt. 23-5.[1]  In particular, it reported that Plaintiff (1) was "removed" from his position at the Naval Air Systems Command Facility "for being absent without leave;" (2) received a one-day suspension for "[f]ailure to follow an instruction and to promote the efficiency of the service;" (3) was delinquent on a "[f]inancial [a]ccount;" and (4) received "[p]sychological [t]reatment."  Dkt. 23-5 at 1.  The comments section of the Adjudication Worksheet noted that the ROI "did not yield any additional information on the issues raised."  Dkt. 29 at 5 (1st Am. Compl. ¶ 17); Dkt. 23-5 at 1.  The form provides a "Length of Proposed Debarment" of 36 months, Dkt. 23-5 at 1, but the "Final Action" is listed as "unfavorable determination," rather than "Agency Debarment as Proposed," *id.*  The MCC gave Plaintiff no

---

[1]  Plaintiff attached the Adjudication Worksheet to his response to Defendants' first motion to dismiss.  *See* Dkt. 23-5.  Because the first amended complaint describes the Adjudication Worksheet in detail, the Court concludes that it is incorporated by reference.  *See Elder Care Servs., Inc. v. Corp. for Nat'l & Cmty. Serv.*, No. 17-cv-1634, 2018 WL 4681002, at *1 n.1 (D.D.C. Sept. 28, 2018) (citing *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007)).

opportunity to contest or correct these findings, Dkt. 29 at 3 (1st Am. Compl. ¶ 10), all of which

Plaintiff alleges are incorrect or misleading, *id.* at 5 (1st Am. Compl. ¶ 17).

On March 4, 2019, Plaintiff filed this lawsuit against the MCC and Blades, asserting four

claims under the due process clause of the Fifth Amendment (Counts I–IV) and two claims under

the Privacy Act (Counts V–VI). Dkt 1. On November 3, 2020, the Court dismissed one of those

Privacy Act claims (Count VI) and "any other claims" arguably raised in Plaintiff's complaint.

*Lamb III*, 498 F. Supp. 3d at 120–21. The Court granted Plaintiff leave to file an amended

complaint so that he could clarify his Privacy Act claim in Count VI and assert any additional

claims, if appropriate. *Id.* On December 1, 2020, Plaintiff filed an amended complaint

realleging the claims in his original complaint, expanding on the Privacy Act in Count VI, and

adding an FTCA claim (Count VII). *See* Dkt. 29. Defendants move to dismiss Count VI for

failure to state a claim and Court VII for lack of subject matter jurisdiction and failure to state a

claim. Dkt. 32. Plaintiff opposes that motion and, in the alternative, seeks leave to amend his

complaint to address the asserted deficiencies. Dkt. 37.

## II. LEGAL STANDARDS

Although pleadings by *pro se* litigants are "held to less stringent standards than formal

pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), they must still

comply with the Federal Rules of Civil Procedure, *see Jarrell v. Tisch*, 656 F. Supp. 237, 239

(D.D.C. 1987).

A motion to dismiss under Rule 12(b)(1) challenges the Court's jurisdiction to hear a

claim and may raise a "facial" or a "factual" challenge to the Court's jurisdiction. *See Hale v.

United States*, No. 13-cv-1390, 2015 WL 7760161, at *3–4 (D.D.C. Dec. 2, 2015). A facial

challenge to the Court's jurisdiction contests the legal sufficiency of the jurisdictional allegations

contained in the complaint, *see Erby v. United States*, 424 F. Supp. 2d 180, 182 (D.D.C. 2006),

while a factual challenge "is addressed to the underlying facts contained in the complaint," *Al-Owhali v. Ashcroft*, 279 F. Supp. 2d 13, 20 (D.D.C. 2003).   For factual challenges, the Court

"'may not deny the motion to dismiss merely by assuming the truth of the facts alleged by the

plaintiff and disputed by the defendant,' but 'must go beyond the pleadings and resolve any

disputed issues of fact the resolution of which is necessary to a ruling upon the motion to

dismiss.'" *Erby*, 424 F. Supp. 2d at 182–83 (quoting *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000)).   As a result, when controverted by competent

evidence, the factual allegations of the complaint are not entitled to a presumption of validity,

and the Court must resolve the factual dispute between the parties. *Id.* at 183.   The Court may

consider the complaint, any undisputed facts, and "the [C]ourt's resolution of disputed facts." *Id.*

(quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

Rule 12(b)(6) is designed to "test[] the legal sufficiency of a complaint." *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).   "To survive a motion to dismiss, a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its

face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 570 (2007)).   A claim is plausible if "the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.*   Although "detailed factual allegations" are not required, the complaint must contain "more

than an unadorned, the-defendant-unlawfully-harmed-me allegation." *Id.* (quoting *Twombly*,

550 U.S. at 555).   In assessing a Rule 12(b)(6) motion, a court may consider only "the facts

contained within the four corners of the complaint," *Nat'l Postal Pro. Nurses v. U.S. Postal Serv.*, 461 F. Supp. 2d 24, 28 (D.D.C. 2006), along with "any documents attached to or

incorporated into the complaint, matters of which the court may take judicial notice, and matters

of public record," *U.S. ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 193 (D.D.C. 2011).

## III. ANALYSIS

**A.     Privacy Act (Count VI)**

1.     *Motion to Dismiss Under Rule 12(b)(6)*

Plaintiff raises two Privacy Act claims in his first amended complaint—one of which

challenges the Adjudication Worksheet (Count V), and the other of which challenges a letter

from the MCC dated April 15, 2016, which is addressed to Plaintiff but, apparently, he never

received (Count VI).  *See* Dkt. 29 at 11–14 (1st Am. Compl.).  According to Plaintiff, he did not

receive the April 15, 2016 letter until October 11, 2018, when he received records from the MCC

pursuant to FOIA.  *Id.* at 4–5 (1st Am. Compl. ¶¶ 15, 21–22).  Defendants move to dismiss only

the latter claim.

The Privacy Act "safeguards the public from unwarranted collection, maintenance, use

and dissemination of personal information contained in agency records" by, among other things,

"imposing responsibilities on federal agencies to maintain their records accurately." *Bartel v.

FAA*, 725 F.2d 1403, 1407 (D.C. Cir. 1984) (footnotes omitted).  In relevant part, the Act

requires that "[e]ach agency that maintains a system of records . . . maintain all records which are

used by the agency in making any determination about any individual with such accuracy,

relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the

individual in the determination." 5 U.S.C. § 552a(e)(5).  If an agency fails to do so, and

"consequently a determination is made which is adverse to the individual," the individual may

sue the agency in federal district court. *Id.* § 552a(g)(1)(C).  A plaintiff may recover damages

under this provision if he establishes that the agency "acted in a manner which was intentional or willful." *Id.* § 552a(g)(4).

To state a claim for damages under § 552a(g)(1)(C), Plaintiff must allege that (1) he "has been aggrieved by an adverse determination;" (2) the MCC "failed to maintain his records with the degree of accuracy necessary to assure fairness in the determination;" (3) the MCC's "reliance on the inaccurate records was the proximate cause of the adverse determination;" and (4) the MCC "acted intentionally or willfully in failing to maintain accurate records." *Deters v. U.S. Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996).

The Court previously dismissed Count VI for failure to allege that any inaccuracies in the April 15 letter proximately caused Plaintiff's termination. Plaintiff's original complaint alleged that, on October 11, 2018, the MCC provided Plaintiff with a letter dated April 15, 2016, that was inaccurate because it purported to include an enclosure "describing the specific charge(s) as well as a summary of the [State Department's] investigative information," but no such enclosure was provided to Plaintiff. Dkt. 1 at 13 (Compl.). Even construing the original complaint liberally, the complaint appeared to allege only that the MCC omitted material when responding to Plaintiff's FOIA request in October 2018. *Lamb III*, 498 F. Supp. 3d at 117. But, if that is all that Plaintiff intended to allege, the claim failed as a matter of law: such an omission, committed in 2018, "could not possibly have caused Plaintiff to lose his job" in 2016. *Id.* Recognizing that the complaint was not entirely clear, however, the Court granted Plaintiff leave to amend, "clarifying this claim, if appropriate." *Id.*

Count VI of Plaintiff's first amended complaint strives to provide that clarification. Plaintiff realleges that on October 11, 2018, the MCC provided Lamb with an "incomplete one page document dated April 15, 2016," Dkt. 29 at 13 (1st Am. Compl.), which is inaccurate in

three respects.  First, he asserts that the letter is "inaccurate in its substance" and "was drafted days prior to his termination and served as the basis for his termination."  *Id.*  Second, he alleges that the "letter deliberately omitted enclosures that laid out the supposed basis for his inability to perform services on behalf of MCC."  *Id.*  According to Plaintiff, "[h]ad those enclosures been included, [he] would have been able to successfully rebut the claims of unfitness and he would not have been terminated or debarred."  *Id.*  Third, Plaintiff at least suggests that the letter falsely states that he was provided an opportunity to respond to the charges against him.  *Id.* at 5 (1st Am. Compl. ¶ 21).

Defendants move to dismiss this claim on two grounds.  First, they once again contend that Plaintiff has not pled facts sufficient to establish causation.  Dkt. 32 at 6–7; *see also Lamb III*, 498 F. Supp. 3d at 117.  To the extent Plaintiff merely alleges that the enclosure and summary were not included in the MCC's response to his FOIA request, that omission had no bearing on any adverse action or determination against Plaintiff.  Dkt. 32 at 7.  And, to the extent Plaintiff alleges that the letter "served as the basis for his termination," Dkt. 29 at 13 (1st Am. Compl.), that contention is belied by Plaintiff's further allegation that the MCC "intentional[ly]" omitted the "enclosure describing the specific charge(s)" and the "summary of the investigative information which served as the basis for MCC finding [Plaintiff] unfit for employment," *id.* Second, Defendants argue that Plaintiff's allegations that the letter "was inaccurate in its substance" and that the MCC "deliberately omitted" the enclosure and summary, *id.*, are too conclusory to survive a motion to dismiss.  Most notably, Defendants stress that Plaintiff offers no factual allegations rebutting the letter's conclusion that he was unfit to perform services on behalf of the MCC due to his prior misconduct or negligence in employment.  *See* Dkt. 32 at 6–7.

Before considering the parties' respective arguments, the Court pauses to decide whether the April 15 letter itself—as opposed to Plaintiff's description of it—is properly before the Court. Plaintiff did not attach the April 15 letter to the first amended complaint, but it does appear as an attachment to Defendants' reply brief in support of summary judgment in Plaintiff's earlier FOIA proceeding. *See* McCarthy Declaration at 30, *Lamb v. Millennium Challenge Corp.*, No. 16-cv-765 (D.D.C. Jan. 23, 2020) (ECF No. 67-2) ("Dkt. 67-2 at 30, Civil Action No. 16-cv-765"). Ordinarily, in deciding a motion to dismiss, "a court does not consider matters outside the pleadings." *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2019); *see also Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) ("In deciding a motion brought under Rule 12(b)(6), a court is restricted from considering matters 'outside' the pleadings." (quoting Fed. R. Civ. P. 12(d)). But a court may consider documents "'incorporated by reference in the complaint' or 'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the parties.'" *Applewhaite v. Shinton*, 859 F. Supp. 2d 157, 159–60 (D.D.C. 2012) (alteration and citation omitted) (quoting *Ward*, 768 F. Supp. 2d at 119); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007); *Banneker*, 798 F.3d at 1133. Not all documents mentioned in a complaint, however, fall within this exception; rather, the exception applies only if the document is attached to the complaint or it "is 'referred to in the complaint and [is] integral to [the plaintiff's] claim.'" *Banneker*, 798 F.3d at 1133 (quoting *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004)) (second brackets in original); *see also* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1327 (4th ed. 2021) (explaining that incorporation is available if the document is "extensively referenced and relied upon" in the complaint); *Hawthorne v. Rushmore Loan Mgmt. Servs., LLC*, No. 20-cv-00393, 2021 WL 3856626 at *1 (D.D.C. Aug. 30, 2021).

"Moreover, if a party contests the authenticity of documents referenced or attached to the complaint, . . . consideration of these records may convert the motion to dismiss into a motion for summary judgment." *Id.* (citing Fed. R. Civ. P. 12(d)).

Here, the Court will consider the MCC letter because it is referenced in and is integral to Count VI. *See, e.g.*, Dkt. 29 at 12 (1st Am. Compl.). Count VI repeatedly refers to the letter, describes its contents, alleges that it is "inaccurate," and seeks a declaration that the MCC is "liable" under the Privacy Act for "maintain[ing]" the letter among its records. *Id.* at 12–13 (1st Am. Compl.). Moreover, far from questioning the authenticity of the letter, Plaintiff's opposition brief directs the Court's attention to a copy of the letter filed in the related FOIA litigation, *see* Dkt. 35 at 4 (citing Dkt. 67-2 at 30, Civil Action No. 16-cv-765), and Defendants raise no objection to Plaintiff's reliance on that document, *see* Dkt. 36 at 2.

Turning to the merits, the Court agrees with Defendants that the first amended complaint fails to plausibly allege that Plaintiff's negative background check resulted from any inaccuracies in the letter or the omission of the enclosure and summary. To state a claim for a violation of 5 U.S.C. § 552a(e)(5), a plaintiff must allege that the agency failed to maintain records "with [the] accuracy . . . and completeness . . . necessary to assure fairness in any determination relating to the qualifications, character, [or] rights" of the plaintiff and that, as a consequence of that failure, "a determination is made which is adverse to the individual." 5 U.S.C. § 552a(g)(1)(C). In other words, the plaintiff must allege "not only that the inaccurate records were considered in making the determination, but that an error in the records *caused* the determination." *Thompson v. Dep't of State*, 400 F. Supp. 2d 1, 19 (D.D.C. 2005); *see also Dick v. Holder*, 67 F. Supp. 3d 167, 185 (D.D.C. 2014) (explaining that a plaintiff must allege "reliance on the allegedly inaccurate record caused [the adverse] determination"). Here, however, Plaintiff's allegations are too conclusory

11

and speculative to meet this burden. Plaintiff alleges that the letter was inaccurate and that "consequently a determination was made which [was] adverse to" him. Dkt. 29 at 13 (1st Am. Compl.). But that language merely tracks the statute, and "[a] pleading that offers [only] 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Two additional allegations in the first amended complaint arguably add some factual detail, but neither is sufficient to survive the motion to dismiss. First, the complaint alleges that the letter "was drafted days prior to [Plaintiff's] termination and served as the basis for his termination." Dkt. 29 at 13 (1st Am. Compl.). Had Plaintiff alleged facts sufficient to permit a plausible inference that the decision to terminate him was based on an inaccuracy in the letter, Plaintiff would be on firm ground. The problem is that he fails to do so, and his "conclusions," without more, "are not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 679. Nor does Plaintiff plausibly allege that the letter or the omission of the enclosure or summary played a role in the decision-making process, *see id.* at 678–79, and the letter itself does not support such an inference. To the contrary, the letter is addressed to Plaintiff—and not to any agency decisionmaker—and it reports that the results of his background investigation "raise a serious question as to [his] fitness to perform services for or on behalf of [the] MCC." Dkt. 67-2 at 30, Civil Action No. 16-cv-765. Plaintiff ultimately received a copy of his ROI and the Adjudication Worksheet, and he separately (and plausibly) alleges that the worksheet contains inaccuracies that resulted in his negative background check and termination. *See* Dkt. 29 at 11–12 (1st Am. Compl.). He does not plausibly allege, however, that a letter addressed *to him*, which contains no analysis and no factual background, formed the basis for the agency's adverse determination.

Second, Plaintiff alleges that, had the letter contained the missing enclosures, he "would have been able to successfully rebut the claims of unfitness and he would not have been terminated or debarred." *Id.* at 13 (1st Am. Compl.). The problem with that contention is that Plaintiff did not receive a copy of the letter until October 2018, more than two years after he was terminated. *Id.* at 5 (1st Am. Compl. ¶ 21). As a result, he cannot plausibly maintain that an inaccuracy or omission in the letter caused his misfortune. Had he received the letter before he was terminated on April 18, 2016, and had the letter contained a copy of the enclosure and summary, Plaintiff might have been able to convince the MCC that it was making a mistake before it ended his employment. But the failure to provide Plaintiff with such an opportunity before acting does not give rise to a claim under the Privacy Act.

In his opposition brief, Plaintiff adds a third theory of causation: He asserts (1) that the letter purported to provide him with an "opportunity to respond to the charges and [to] make any comments or explanation [he] wish[ed] in the space provided after each charge," *see* Dkt. 67-2 at 30, Civil Action No. 16-cv-765; (2) that he never received such an opportunity; and (3) "[b]y creating the false impression that Plaintiff was given an opportunity to respond [and that he failed to avail himself of that opportunity], the letter suggest[ed] that the charges were thoroughly substantiated, thus providing a stronger basis for [the] MCC's decision to terminate Plaintiff." Dkt. 35 at 5. The first problem with this theory is that it appears nowhere in the first amended complaint. Plaintiff does not allege that the letter inaccurately reported that Plaintiff had received an opportunity to respond to the charges against him, and it is well settled that a plaintiff, even when proceeding *pro se*, may not amend his complaint through an opposition brief. *See*, *e.g.*, *Sai v. TSA*, 326 F.R.D. 31, 33 (D.D.C. 2018) (citing cases). Even beyond this difficulty, moreover, Plaintiff's third theory of causation is not "enough to raise a right to relief

13

above the speculative level." *Twombly*, 550 U.S. at 555. ("[T]he pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." (citing Wright & Miller, supra, § 1216 (3d ed. 2004))). Here, beyond the mere existence of the letter, there is no reason to surmise that the MCC decisionmaker reviewed the letter before deciding how to proceed; incorrectly believed, based on the letter, that Plaintiff had an opportunity to respond to the charges against him and declined that offer; and inferred from Plaintiff's failure to respond that the charges were meritorious.

"[E]ven a *pro se* [complaint] must contain 'sufficient factual matter' for the Court to conclude that relief is plausible." *Nichols v. Vilsack*, No. 13-cv-1502, 2015 WL 9581799, at *12 (D.D.C. Dec. 30, 2015); *see also Lewis v. Bayh*, 577 F. Supp. 2d 47, 55–56 (D.D.C. 2008) ("Although the court recognizes that *pro se* complaints are 'held to less stringent standards than formal pleadings drafted by lawyers,' they must still provide more than conclusory allegations to survive a motion to dismiss." (alterations and citation omitted) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972))). With respect to causation, Plaintiff's first amended complaint alleges only that the "letter . . . served as the basis for his termination." Dkt. 29 at 13 (1st Am. Compl.). If the letter itself contained some indication that the agency intended to rely on its contents to make a final decision, then perhaps this allegation would be sufficient. But the letter includes no such indication, and the Court cannot otherwise discern how the scant letter to Plaintiff—as opposed to the underlying ROI and Adjudication Worksheet, which separately form the basis for Count V of the first amended complaint—could have led to Plaintiff's termination.

The Court will, accordingly, **DISMISS** Count VI of the first amended complaint for failure to state a claim.

    2.    *Motion for Leave to Amend*

Anticipating the Court's conclusion, Plaintiff moves for leave to file a second amended complaint to "clarif[y] the content and significance of the [MCC letter] that [allegedly] resulted in his termination." Dkt. 37 at 2.  Under Federal Rule of Civil Procedure 15(a)(2), courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962).  But "leave to amend should be denied when amendment would be futile," *Sai v. DHS*, 149 F. Supp. 3d 99, 126 (D.D.C. 2015), including when "the proposed claim would not survive a motion to dismiss," *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).  Here, Plaintiff's proposed amendment is futile.

If granted leave to amend, Plaintiff would add the following new allegations regarding the MCC letter: First, Plaintiff would clarify that the letter was inaccurate because (1) "it inaccurately stated that included therein was an 'enclosure'" when "no such documents were included;" (2) the letter "gave the false impression that there were several documents that substantiated the conclusion that Plaintiff was unfit for employment" when "the only investigative information resulting from the [State Department's] background investigation was the ROI;" and (3) "the letter falsely stated that Plaintiff was given an 'opportunity to respond to these charges and make any comments or explanations he wished,'" which "gave the impression that the lack-of-fitness finding had withstood challenge and was therefore credible." Dkt. 37 at 8–9.  For the reasons explained above, none of these clarifications would remedy the principle flaw in the Privacy Act claim—that Plaintiff fails to plausibly allege that any deficiency or inaccuracy in the letter (as opposed to the Adjudication Worksheet) caused the MCC to find Plaintiff unfit for employment.

Second, Plaintiff's second amended complaint would add the following new allegations about causation:

The[] inaccuracies [in the letter] led to Plaintiff's termination. MCC personnel who made the decision to fire Plaintiff surely saw this letter in Plaintiff's file and formulated several errant conclusions, including: first, that there actually existed specific charges and that there was supporting documentation to those specific charges and[,] second, that Plaintiff had the opportunity to contest the finding but failed to do so – either out of neglect or because he had nothing to say in his defense. Had MCC personnel known that the only investigative information was the ROI and no other supporting documentation existed, they would not have found Plaintiff unfit and fired him. Had they known that Plaintiff had not received the letter or had an opportunity to contest it, they would have provided him such an opportunity before considering taking an adverse action against him.

Dkt. 37 at 8–9 (footnote omitted). Although these allegations are more explicit than those contained in the first amended complaint, they also suffer from the same flaws discussed above. Most notably, Plaintiff still offers no factual allegations that raise a claim "to relief above the speculative level." *Twombly*, 550 U.S. at 555. Plaintiff merely asserts that "MCC personnel . . . surely saw th[e] letter," must have incorrectly inferred that "there was supporting documentation" for the charges of misconduct or negligence in employment, and must have assumed that Plaintiff had the opportunity to respond to the charges "but failed to so —either out of neglect or because he had nothing to say in his defense." Dkt. 37 at 8. Even assuming the truth of Plaintiff's *factual allegations*, as the Court must, these *conclusions* amount to nothing more than "a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting Wright & Miller, supra, § 1216). Indeed, accepting the truth of the facts alleged in Plaintiff's proposed second amended complaint, the Court concludes that it is not merely unlikely, but implausible, that the MCC decisionmakers were unaware of the ROI or Adjudication Worksheet. *Iqbal*, 556 U.S. at 678–79. And, similarly, the Court is unpersuaded that Plaintiff's bare allegations "nudge[]" his further claim—that the letter misled the MCC decisionmaker to believe that Plaintiff simply declined the agency's invitation to respond to the

charges against him and, on that basis, inferred that he was guilty of those charges—"across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

Plaintiff's efforts to correct the flaws in his existing complaint are, therefore, futile. The Court will, accordingly, **DENY** Plaintiff's motion for leave to file a second amended complaint as to Count VI.

## B.     FTCA (Count VII)

Defendants also move to dismiss Count VII of Plaintiff's first amended complaint, which seeks relief under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.* The FTCA waives the sovereign immunity of the United Sates and "allows a plaintiff to bring certain state-law tort suits against the Federal Government." *Brownback v. King*, 141 S. Ct. 740, 745 (2021). Here, Plaintiff does not identify the state-law tort claims he seeks to invoke but, rather, alleges that the MCC (1) "violated Plaintiff's rights by terminating him without cause, debarring him due to unspecified 'psychological treatment,' and depriv[ing] him of the opportunity to contest the finding that he was unfit for employment" and (2) "failed to maintain his records in a manner necessary to ensure that he was not denied employment opportunities." Dkt. 29 at 14 (1st Am. Compl.).

Defendants move to dismiss the FTCA claim for its "many . . . failings." Dkt. 32 at 9. Defendants argue that the Court lacks jurisdiction because Plaintiff failed to exhaust his administrative remedies. *See id.* at 8. They argue that Plaintiff may only bring an FTCA claim against the United States and that he has not named the United States as a defendant. *Id.* at 9. And, they argue that Plaintiff "fail[s] to allege or even identify a common law tort . . . for which the FTCA has waived the United States' sovereign immunity." *Id.*

The Court starts, as it must, with subject-matter jurisdiction. Under the FTCA, "[a]n action shall not be instituted upon a claim against the United States for money damages . . . , unless the claimant [has] first presented the claim to the appropriate Federal agency." 28 U.S.C. § 2675(a). Under the law of this circuit, the exhaustion requirement is jurisdictional. *See Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997) ("This court . . . [has] treated the FTCA's requirement of filing an administrative complaint with the appropriate agency prior to instituting an action as jurisdictional."); *Rasul v. Myers*, 563 F.3d 527, 528 n.1 (D.C. Cir 2009) ("Since plaintiffs failed to exhaust their administrative remedies as required by the FTCA, the district court lacked jurisdiction." (internal citation omitted)); *Davis v. United States*, 944 F. Supp. 3d 36, 39 (D.D.C. 2013) ("The plaintiff's failure to submit an administrative claim under the FTCA to the [agency] prior to filing this lawsuit deprives this Court of subject matter jurisdiction."). Accordingly, the Court lacks jurisdiction unless Plaintiff exhausted his administrative remedies.

In considering Defendants' motion to dismiss Plaintiff's original complaint, the Court held that Plaintiff failed to exhaust administrative remedies, as required by the FTCA. *Lamb III*, 498 F. Supp. 3d at 118. Although Plaintiff's original complaint did not mention the FTCA, Plaintiff argued in his opposition brief that his complaint stated an FTCA claim, and, in the alternative, he sought leave to amend the complaint to add allegations in support of such a claim. Dkt. 23 at 10–11. Plaintiff also alleged that he "filed a complaint with the MCC on July 22, 2019," thereby satisfying the FTCA's exhaustion requirement. *Id.* at 10. In response, Defendants raised the same jurisdictional argument that they now assert, arguing that the Court lacked jurisdiction over Plaintiff's putative FTCA claim because Plaintiff "filed his administrative claim," if at all, "*after* he filed his District Court complaint." Dkt. 25 at 4. The

Court agreed, holding that "[b]ecause Plaintiff did not exhaust administrative remedies *before* filing suit," the Court was required to "dismiss his FTCA claims, insofar as his complaint [could] be read to present any." *Lamb III*, 498 F. Supp. 3d at 118.

The Court went on to explain that the question "[w]hether Plaintiff [could] amend his compliant to cure this defect present[ed] a more difficult question." *Id*. The Court continued:

> [T]he FTCA provides that a federal lawsuit "shall not be instituted" until after the plaintiff has "first presented the claim to the appropriate [f]ederal agency" and that claim has "been finally denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). The Supreme Court has interpreted the word "instituted" in the FTCA as meaning to "begin" or "commence," such that exhaustion is required "before invocation of the judicial process." *McNeil* [*v. United States*], 508 U.S. [106,] 112 [(1993)]. Although "a plaintiff can often cure a pleading defect by amending the complaint," an amended or supplemental complaint cannot change when a plaintiff brought his action. *See U.S. ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 929 (D.C. Cir. 2017) (reaching a similar conclusion in the context of the False Claims Act based on the "distinction between the complaint and the underlying action").

> In a more recent decision, however, the D.C. Circuit took a more practical approach to whether a plaintiff could cure a defect in Article III standing through an amended or supplemental complaint. *Scahill v.* [*District of Columbia*], 909 F.3d 1177, 1182–84 (D.C. Cir. 2018). Although jurisdiction is generally determined at the time a plaintiff brings suit, the court of appeals concluded that permitting plaintiffs to cure such jurisdictional defects through amended pleadings avoids "the unnecessary hassle and expense of filing a new lawsuit when events subsequent to filing the original complaint have fixed the jurisdictional problem." *Id.* at 1184. The court of appeals based its decision on Supreme Court cases that assessed jurisdiction based on supplemental pleadings filed subsequent to the initial complaint, *see Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007); *Mathews v. Diaz*, 426 U.S. 67, 75 (1976), and on the supplemental pleading provision of Federal Rule of Civil Procedure 15(d), which provides that such pleading may "set[] out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented," Fed. R. Civ. P. 15(d). *See Scahill*, 909 F.3d at 1182–84. The *Mathews* case from the Supreme Court is particularly relevant because it also dealt with an administrative exhaustion requirement. 426 U.S. at 75. Although exhaustion was a "nonwaivable condition of jurisdiction," the Supreme Court had "little difficulty" asserting jurisdiction because the plaintiff "satisfied this condition while the case was pending in the District Court" and "[a] supplemental complaint in the District Court would have eliminated this jurisdictional issue." *Id.*

*Id.* at 118–19.  But, having raised this question, the Court ultimately declined to pass on it, noting that it was "unclear whether the MCC ha[d] issued a final denial" of Plaintiff's administrative claim and that, as a result, it was "premature for the Court to consider whether an amendment to Plaintiff's complaint or a supplemental complaint might remedy his failure to exhaust." *Id.* at 119.

Plaintiff's first amended complaint alleges (1) that he filed an FTCA administrative claim with the MCC on July 18, 2019; (2) that the FCTA provides that the "failure of an agency to make [a] final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final decision of the claim," 28 U.S.C. § 2675(a); (3) that six months had passed; and (4) that Plaintiff is exercising his option of deeming the agency's failure to act as a "final decision" on the claim.  Dkt. 29 at 14 (1st Am. Compl.).  In short, Plaintiff alleges that, even if he failed to exhaust his administrative remedies before bringing suit, he has now done so.  That raises the question that the Court deferred deciding in its prior opinion.

Before turning to that question, the Court must address a threshold factual issue that the MCC raises.  According to the MCC, it never received Plaintiff's administrative claim.  Dkt. 32 at 8.  That factual dispute matters because Defendants challenge the Court's subject-matter jurisdiction under Rule 12(b)(1), and, thus, Plaintiff bears the burden of demonstrating by a preponderance of the evidence that he submitted a claim to the MCC, *Thomas v. Nicholson*, 539 F. Supp. 2d 205, 213 (D.D.C. 2008), even at this threshold stage of the litigation, *see Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018).  To the extent the parties submit "affidavits and other exhibits" in support of their respective positions, moreover, the Court must "weigh the conflicting evidence" to determine its jurisdiction.  *Thomas*, 539 F. Supp. 2d at 213.

Plaintiff has met his burden of demonstrating by a preponderance of the evidence that he submitted his administrative claim to the MCC. According to Defendants, the MCC has no record of receiving such a claim. In support of that contention, they attach a declaration from Richard J. McCarthy, General Counsel for Administration in the Office of General Counsel at the MCC, attesting that he "ha[s] not seen or accepted any such administrative claim" and that the "MCC has no record of Mr. Lamb serving MCC with an administrative FTCA claim." Dkt. 32-1 at 1. In response, Plaintiff submits a Standard Form 95, "Claim for Damage, Injury, or Death," that lists the MCC as the claim recipient; uses the address that appears on the MCC's website; identifies Plaintiff as the "claimant;" and is dated July 18, 2019. *See* Dkt. 35-1 at 1. Plaintiff also submits photocopies of a post office receipt, also dated July 18, 2019, and a return receipt from the MCC, which shows a delivery date of July 22, 2019, and which bears the signature of Jahnai Isom. *See id.* at 17. And, finally, Plaintiff submits a copy of what appears to be Isom's online CV, indicating that she worked at the MCC from October 2017 to November 2020. *Id.* at 18.

With this evidence in mind, the Court finds that Plaintiff has met his burden of demonstrating that he delivered his claim to the MCC. The Court does not question the veracity of McCarthy's declaration. But it is possible—and, under the present circumstances, likely— that the claim was delivered to the MCC but was misplaced or never made it to McCarthy. Significantly, Defendants do not cite any rule or publication that would have put Plaintiff on reasonable notice that he needed to address his claim to McCarthy or needed to obtain confirmation that McCarthy personally received it.

The Court is also persuaded that, even though Plaintiff never received a final denial or other response, he exhausted his administrative remedies. As Plaintiff notes, the FTCA

expressly contemplates circumstances like those presented here and provides that a claimant

may, at his option, treat an agency's failure to respond within six months as "a final denial of the

claim for purposes of" the FTCA.  28 U.S.C. § 2675(a).  Here, Plaintiff alleges that he submitted

his claim on July 18, 2019, and that, "to date, the MCC has not responded."  Dkt. 29 at 14 (1st

Am. Compl.).  Other than disputing that it received the claim, Defendants do not challenge these

assertions, and the Court concludes that Plaintiff's claim is properly deemed "denied" under the

statute.

This, then, tees up the question whether a plaintiff who fails to exhaust his FTCA

administrative remedies before bringing suit, but exhausts while the case is pending, can cure the

jurisdictional defect in his original complaint by filing an amended or supplement complaint that

adds the intervening jurisdictional allegations.  The answer to that question begins with the

Supreme Court's decision in *McNeil v. United States*, 508 U.S. 106 (1993).  In that case, the

plaintiff—who, like Plaintiff here, was proceeding *pro se*—filed an FTCA claim in March 1989,

but he did not submit an administrative claim to the agency or receive a denial of that claim until

July 1989.  *Id.* at 108–09.  The United States "was not served with a copy of [the] complaint until

July 30, 1990," *id.* at 108, and thus no "progress ha[d] taken place in the litigation before the

administrative remedies [were] exhausted," *id.* at 110.  But the Supreme Court nonetheless held

that the plaintiff's claim was premature, and, on that basis, the Court held that the complaint was

properly dismissed for lack of jurisdiction.  *Id.* at 111–13.

To reach this conclusion, the Court started with the "unambiguous" text of the FTCA:

The statute "commands that an 'action shall not be instituted . . . unless the claimant shall have

first presented the claim to the appropriate Federal agency and his claim shall have been final

denied by the agency in writing and sent by certified or registered mail.'"  *Id.* at 111 (quoting 28

U.S.C. § 2675(a)). Employing this clear imperative, the Court had little difficulty concluding that, because the plaintiff had not filed his claim and had not received a final denial as of the day he filed his complaint, his "complaint was filed too early." *Id.* Nor was the Court convinced that the plaintiff's "subsequent receipt of a formal denial from the agency [could be] treated as the event that 'instituted' the action" within the meaning of the FCTA. *Id.* Rather, as used in the FTCA, the word "instituted" means "begin" or "commence," and, thus, "[t]he most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process." *Id.* at 112. It does not mean, as the plaintiff urged, that an action is "instituted" on the date when all "necessary predicates to invocation of the court's jurisdiction—namely, the filing of [a] complaint and the formal denial of the administrative claim"—are satisfied. *Id.* at 111. In short, an action is "instituted" when "the judicial process" begins. *Id.* at 112.

In reaching this conclusion, the Supreme Court was unswayed by the plaintiff's status as a *pro se* litigant. The Court observed that the statutory text is clear and, thus, the exhaustion requirement "is certainly not a 'trap for the unwary.'" *Id.* at 113. Although the Court recognized that *pro se* litigants are often accorded some leeway, it stressed, "we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *Id.* "[I]n the long run," the Court wrote, "experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law.'" *Id.* (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

That analysis comes very close to resolving the questioned presented here, with one caveat: the *McNeil* Court declined to decide whether the plaintiff in that case took any step that

"constituted the commencement of a new action" "after the denial of his administrative claim on July 21, 1989." *Id.* at 110.  As a result, the Court arguably left unanswered the question whether a plaintiff can overcome the FTCA's exhaustion requirement by filing an amended or supplemental complaint.  Or, to put the question in slightly different terms, may the Court treat a supplemental complaint  as a "new action," thereby relieving the FTCA plaintiff of the "unnecessary hassle and expense of filing a new lawsuit," *Scahill*, 909 F.3d at 1184, merely to assert subsequently arising facts or circumstances that are necessary to the Court's jurisdiction?  Although a close question, the Court concludes that the FTCA does not permit a plaintiff to rescue a prematurely filed lawsuit by amending or supplementing his complaint.

In recent years, courts have at times permitted plaintiffs to cure jurisdictional defects by supplementing their complaints with newly arising facts, notwithstanding the usual rule that jurisdiction is determined at the time the action is commencement.  In *Northstar Financial Advisors Inc. v. Schwab Investments*, 779 F.3d 1036 (9th Cir. 2015), for example, the plaintiff lacked Article III standing at the time it brought suit, but it obtained "an assignment of claim . . . several months after the original complaint was filed," and that assignment cured the deficiency. *Id.* at 1043.  The defendant argued that the plaintiff's only option was to bring a new lawsuit, "because standing must be determined at the time a complaint is filed." *Id.*  The Ninth Circuit was unconvinced, reasoning that "a lack of subject-matter jurisdiction should be treated like any other defect for purposes of defining the proper scope of supplemental pleading." *Id.* (quoting Wright & Miller, supra, § 1507 (3d ed. 1998)).  Indeed, as the Ninth Circuit observed, in *Mathews v. Diaz*, 426 U.S. 67 (1976), the Supreme Court permitted "an applicant for Medicare" to cure a "jurisdictional defect . . . by a supplemental pleading.'" *Northstar Fin. Advisors*, 779 F.3d at 1044.  The Ninth Circuit then quoted the following passage from *Mathews*:

24

> Although 42 U.S.C. § 405(g) establishes filing of an application as a nonwaivable condition of jurisdiction, [the claimant] satisfied this condition while the case was pending in the District Court.  A supplemental complaint in the District Court would have eliminated this jurisdictional issue: since the record discloses, both by affidavit and stipulation, that the jurisdictional condition was satisfied, it in not too late, even now, to supplement the complaint to allege this fact.

*Id.* (quoting *Mathews*, 426 U.S. at 75).  The D.C. Circuit reached a similar conclusion in *Scahill*.

*See* 909 F.3d at 1183–84.  Recognizing that the circuits are split on the issue, the D.C. Circuit

joined the Ninth Circuit in holding "that a plaintiff may cure a standing defect under Article III

through an amended pleading alleging facts that arose after filing the original complaint."  *Id.* at

1184.

The question posed here, however, differs from the question decided in *Northstar*

*Financial Advisors* and *Scahill* in a number of critical respects.  To start, and most significantly,

those cases recognized a judge-made exception to a judge-made rule.  Both cases grappled with

the general principle—first articled by Chief Justice John Marshall in the context of determining

diversity jurisdiction—that "jurisdiction of the court depends upon the state of things at the time

of the action brought."  *Mollane v. Torrance*, 9 Wheat. 537, 539 (1824); *see also Rockwell Int'l*

*Corp. v. United States*, 549 U.S. 457, 473 (2007).  That principle—known as the "time-of-filing

rule"—while long-established, is grounded in policy considerations, *see Grupo Dataflux v. Atlas*

*Glob. Grp., L.P.*, 541 U.S. 567, 580 (2004) ("The time-of-filing rule is what it is precisely

because the facts determining jurisdiction are subject to change, and because constant litigation

in response to that change would be wasteful."), not in any congressional command, *see id.* at

583 (Ginsburg, J., dissenting) ("[Justice Marshall] did not extract this practical time-of-filing rule

from any constitutional or statutory text."); *Iowa Tribe of Kan. & Neb. v. Salazar*, 607 F.3d

1225, 1233 (10th Cir. 2010) ("The time-of-filing rule is a judge-made doctrine."), and it is

subject to certain exceptions, *see, e.g*, *Grupo Dataflux*, 541 U.S. at 572–73; *Wild v. Subscription Plus, Inc.*, 292 F.3d 526, 528 (7th Cir. 2002); *Dominium Austin Partners, LLC v. Emerson*, 248 F.3d 720, 725 (9th Cir. 2001). And, in both *Northstar Financial Advisors* and *Scahill*, the courts recognized prudential exceptions for cases in which facts necessary to establish standing occur after suit is brought and no purpose would be served by requiring the plaintiff to file a new action.

The present dispute, in contrast, requires the Court to apply an "unambiguous" statutory "command," which the Court is not "free to rewrite." *McNeil*, 508 U.S. at 111. Under the plain language of the FTCA, "[a]n action shall not be instituted . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been final denied by the agency in writing and sent by certified or registered mail." 28 U.S.C. § 2675(a). The relevant language is clear and emphatic: a claimant may not institute—that is, "begin" or "commence"—an action unless the claimant has already presented his claim and agency has denied it. *McNeil*, 508 U.S. at 112. The Federal Rules of Civil Procedure are equally clear: "A civil action is *commenced* by filing a complaint with the court," Fed. R. Civ. P. 3 (emphasis added), and not by amending or supplementing an existing complaint, Fed. R. Civ. P. 15.

The purposes of the relevant rules differ in important respects, as well. The time-of-filing rule recognizes that jurisdictional facts are subject to change and that constantly evolving facts can lead to confusing, inefficient, and "wasteful" litigation. *Grupo Dataflux*, 541 U.S. at 580. Recognizing a narrow exception to that rule to avoid "the unnecessary hassle and expense of filing a new lawsuit when events subsequent to tiling the original complaint have fixed the jurisdictional problem," *Scahill*, 909 F.3d at 1184, serves the same underlying interest in judicial efficiency served by the time-of-filing rule. The FTCA pre-suit exhaustion rule serves a

different purpose and creating an exception for amended or supplement pleadings runs counter to that purpose. As the Supreme Court observed in *McNeil*, "at least one objective of the [pre-suit exhaustion rule is] to 'reduce unnecessary congestion in the courts.'" 508 U.S. at 112 n.8 (quoting S. Rep. No. 89-1327, at 4 (1966), *as reprinted in* 1996 U.S.C.C.A.N. 2515, 2518). That purpose is served most effectively by discouraging claimants from filing suit before they give the administrative agency a meaningful opportunity to consider the claim. Indeed, to hold otherwise would invite the precise kind of "burden[s] on the judicial system and on the Department of Justice" and the disorderly "administration of this body of litigation" that the pre-suit exhaustion requirement is designed to avoid. *Id.* at 112; *see also Sai*, 99 F. Supp. 3d. at 63 ("Permitting a party to file suit without exhausting, only to then seek a stay of the proceeding while he or she files and exhausts an administrative claim, would undermine the exhaustion requirement and would unnecessarily burden the courts and the parties.").

Construing the pre-suit exhaustion requirement in a manner that precludes curing defects in amended or supplement pleadings is also consistent with the weight of authority. This Court has held on several occasions that the "[f]ailure to exhaust administrative remedies [under the FTCA] before bringing suit . . . cannot be remedied by amending the complaint or attempting to exhaust while the suit is pending." *Sai*, 99 F. Supp. 3d at 63; *see also, e.g.*, *Norton v. United States*, --- F. Supp. 3d ---, 2021 WL 1061544, at *5 (D.D.C. 2021); *Harrod v. U.S. Parole Comm'n*, No. 13-774, 2014 WL 606196, at *1 (D.D.C. Feb. 18, 2014); *Edwards v. District of Columbia*, 616 F.Supp.2d 112, 116 (D.D.C. 2009). Courts outside this jurisdiction, moreover, have reached the same conclusion. *See Sparrow v. USPS*, 825 F. Supp. 252, 255 (E.D. Cal. 1993) ("If the claimant is permitted to bring suit prematurely and simply amend his complaint after denial of the administrative claim, the exhaustion requirement would be rendered

meaningless."); *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999) ("Allowing claimants generally to bring suit under the FTCA before exhausting their administrative remedies and to cure the jurisdictional defect by filing an amended complaint would render the exhaustion requirement meaningless and impose an unnecessary burden on the judicial system."); *Toomey v. United States*, No. 10-260, 2012 WL 876801, at *3–4 (E.D. Ky. Mar. 14, 2012) (same).

The Court is therefore unpersuaded that the *Northstar/Scahill* line of cases counsels in favor a creating a similar exception to the FTCA pre-suit exhaustion requirement. Although a slightly closer question, the Court is also convinced that *Mathews v. Diaz* is inapposite. In *Mathews*, the plaintiffs were noncitizens who challenged the Social Security Act's eligibility requirements for noncitizens seeking enrollment in Medicare Part B's supplemental insurance program. 426 U.S. at 69–70. The Social Security Act "establishes filing of an application as a nonwaivable condition of jurisdiction" in 42 U.S.C. § 405(g).[2] *Id.* at 69–70. One plaintiff failed to file a Medicare Part B application until after he joined the lawsuit as a party. *Id.* at 71–72. Despite § 405(g)'s exhaustion requirement, the Supreme Court had "little difficulty" holding that the district court had jurisdiction over that plaintiff's claim because he "satisfied the[e statute's requirement] while the case was pending in the [d]istrict [c]ourt." *Id.* at 75. The Court reasoned that "[a] supplemental complaint . . . would have eliminated this jurisdictional issue" and concluded that "it is not too late, even now, to supplement the complaint to allege this fact." *Id.*

The key difference between the Social Security Act and the FTCA is that only the latter clearly prohibits the Court from hearing a case before the plaintiff has exhausted administrative

---

[2] In relevant part, 42 U.S.C. § 405(g) provides: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."

remedies. *See* 28 U.S.C. § 2675(a). This distinction was highlighted by Judge Bryson in his opinion for the Federal Circuit in *Black v. Secretary of Health and Human Services*, 93 F.3d 781 (Fed. Cir. 1996). In that case, a plaintiff sought compensation under the National Childhood Vaccine Injury Act of 1986 ("Vaccine Act"), 42 U.S.C. §§ 3300aa *et seq.*, which at the time provided that individuals who suffered certain vaccine-related injuries could receive compensation by filing a petition with the Vaccine Injury Compensation Program attesting, among other things, that the claimant had "incurred unreimbursable expenses . . . in an amount greater than $1,000." 42 U.S.C. § 300aa–11(c)(1)(D)(i) (1996).[3] The question in *Black* was whether a petitioner could satisfy the statutory $1000 requirement through "a supplemental pleading filed after the initial petition." *Black*, 93 F.3d at 784.

In answering that question, the Federal Circuit emphasized that "determining whether a supplemental pleading can be used to rescue an insufficient petition or complaint in a particular case depends on a careful reading of the substantive provision at issue." *Id.* at 790. Thus, "[i]f the statute in question contains . . . an express prohibition against filing a complaint before the expiration of a statutory waiting period, it would defeat the purpose of the statutory prohibition to permit a plaintiff to ignore the waiting period, file his complaint during the prohibited period, and then seek to cure the defect by filing a supplemental pleading alleging that he waiting period expired during the pendency of the action." *Id.* As the Federal Circuit explained, the FTCA is a prime example of such a regime: it contains an "express prohibition[] against filing suit . . . before exhausting administrative remedies." *Id.*; *see also* 28 U.S.C. § 2675(a) ("An action shall not be instituted . . . unless the claimant shall have first [exhausted administrative remedies].").

---

[3] Congress later eliminated the $1000 requirement from the Vaccine Act. *See* Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. 105-277, § 1502, 112 Stat. 2681, 2681-741 (1998).

The Medicare Act, in contrast, does not contain such an express prohibition.  *See* 42 U.S.C.

§ 405(g) ("Any individual, after any final decision of the Commissioner . . . , may obtain a

review of such decision by a civil action.").  It was for that reason, according to the Federal

Circuit, that the Supreme Court held in *Mathews* that the Medicare Act "did not forbid[] a

claimant from filing an action prior to the agency's denial of an administrative claim," even

though the statute authorized an individual to obtained judicial review only "after [receiving a]

final decision" from the agency.  *Black*, 93 F.3d at 791.  Applying this understanding, the

Federal Circuit held that the Vaccine Act was "more akin to the [Social Security Act] at issue in

*Mathews* . . . than to the [FTCA] at issue in *McNeil*," and, accordingly, it held that the plaintiff

could establish jurisdiction by supplementing his petition.[4]

The Court agrees with the line that the Federal Circuit drew in *Black*.  Although the

Medicare Act and the FTCA both require exhaustion before bringing suit, the language of the

FTCA is far more categorical and compulsory, and it is designed to prevent unnecessary and

premature litigation from burdening "the judicial system and . . . the Department of Justice."

*McNeil*, 508 U.S. at 112.  Given the FTCA's express prohibition against prematurely filing suit,

*see id.* at 111–12, and the fact that neither *Mathews*, *Northstar Financial Advisors*, nor *Scahill*

involved an analogous jurisdictional provision, the Court concludes that an FTCA plaintiff

cannot cure a premature filing "by . . . attempting to exhaust while the suit is pending" and filing

an amended or supplement complaint.  *Sai*, 99 F. Supp. 3d at 63.  Indeed, this case illustrates the

importance of maintaining that bright-line rule.  Plaintiff filed his original complaint on March 4,

---

[4] More precisely, the Federal Circuit held, based on its interpretation of the "joint operation" of
multiple provisions in the Vaccine Act, that a plaintiff could establish jurisdiction through
supplemental pleading so long as she incurred $1000 in expenses "during the limitations period"
described in the Act.  *See Black*, 93 F.3d at 791–92.

2019, Dkt. 1, and he now contends that he exhausted his administrative remedies under the FTCA by mailing a copy of that complaint to the MCC July 18, 2019, Dkt. 29 at 14–15 (1st Am. Compl.).  That is not the process that the FTCA envisions.

The Court will, accordingly, **DISMISS** Count VII for lack of subject matter jurisdiction. And, because the Court determines that Plaintiff cannot cure this jurisdictional defect through an amended or supplemental pleading, the Court will **DENY** Plaintiff's motion for leave to file a second amended complaint as to Count VII as futile.

## CONCLUSION

For these reasons, the Court hereby **GRANTS** Defendants' motion to dismiss Counts VI and VII of Plaintiff's first amended complaint, Dkt. 32.  The Court **DENIES** Plaintiff's motion for leave to file a second amended complaint, Dkt. 37, as futile.  The remainder of Plaintiff's claims in his first amended complaint, Counts I–V, are unaffected by this order.

**SO ORDERED.**

RANDOLPH D. MOSS
United States District Judge

Date:  September 27, 2021

31